United States District Court
Southern District of Texas
**ENTERED**
January 17, 2023
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHISN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| Mary Jane Meyer, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action H-21-2796 |
| | § | |
| Kilolo Kijakazi, | § | |
| Acting Commissioner of the | § | |
| Social Security Administration, | § | |
| *Defendant.* | § | |

## Memorandum and Recommendation

Mary Jane Meyer appeals the Social Security Administration (SSA) Commissioner's final decision denying her application for social security benefits. ECF No. 1. Pending before the court are Plaintiff's Motion for Summary Judgment, ECF No. 11, and Defendant's Motion for Summary Judgment, ECF No. 12, with a brief in support thereof, ECF No. 13. These motions are before the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1). Having considered the motions, administrative record, and applicable law, the court recommends that the final decision of the Commissioner be affirmed.

### 1. Procedural Posture

Meyer applied for disability insurance benefits on April 11, 2019. Tr. 52. Meyer claimed that she became disabled on November 13, 2013. *Id.* She claimed disability due to memory loss, stage 1 kidney cancer, vision loss, headaches,

temporomandibular joint dysfunction, Poland syndrome, fibromyalgia syndrome, chronic fatigue syndrome, illness from her breast implant, degenerative disk disease in her neck, and severe dry eyes. Tr. 53–54. Meyer was born on December 2, 1960, and was fifty-two years old on the alleged disability onset date. Tr. 53. Before the alleged onset of her disability, Meyer worked as a director of information technology for the American Red Cross. Tr. 36.

The SSA denied Meyer's application on September 11, 2019, and again on reconsideration on February 27, 2020. Tr. 52, 73. At Meyer's request, Administrative Law Judge (ALJ) Richard Gilbert held a hearing on December 1, 2020, in Houston, Texas. Tr. 32–50, 88–89. Three witnesses testified at the hearing—Giao Hoang, M.D., Meyer, and vocational expert (VE) Kassandra Humphress. Tr. 36–50. Meyer was represented by an attorney, Kristi Ward Stephens. Tr. 32.

Before testifying, Dr. Hoang, who is board certified in internal medicine, reviewed all the medical records that had been admitted at the hearing. Tr. 37. Dr. Hoang's review of the records revealed that, prior to December 31, 2017, the date when Meyer was last insured for purposes of the Social Security Act, Meyer suffered from several medical problems, including: bilateral knee pain; joint stiffness and numbness in her hand; Poland syndrome (loss of function in her pectoral muscles); breast hypoplasia (underdevelopment); cervical spine problems

resulting in a 2004 surgical treatment; fibromyalgia; sleep apnea; and diverticulosis. Tr. 38–40. Dr. Hoang testified that Meyer would be limited to light work with several additional limitations: she could not raise her arms above shoulder level; she could perform fine and gross manipulation with her hands only frequently, but not constantly; she could not climb ropes scaffolds or ladders. Tr. 39–42. With respect to fibromyalgia, Dr. Hoang agreed that Meyer had complained of brain fog, memory issues, and fatigue. Tr. 43. Dr. Hoang also agreed that those symptoms could be caused by fibromyalgia. Tr. 43–44.

Meyer testified about her medical conditions and symptoms. She reported having chronic pain, memory loss, difficulty concentrating, and brain fog. Tr. 44. Meyer explained that standing for long periods would cause her to become dizzy and to have trouble speaking. *Id.* According to Meyer, being around a lot of people talking or loud noises would cause her pain and make her feel "very anxious and tense." Tr. 44–45. She testified that she experienced both long and short term memory loss. Tr. 45. According to Meyer, she could not discuss the software applications she had previously managed and could not remember the things she did on her job. *Id.* About her memory, she testified that "Sometimes I feel like I have clarity but it's intermittent." *Id.* Relatedly, Meyer testified about her chronic fatigue due to fibromyalgia and her ongoing neck pain. Tr. 47–48. According to Meyer, she

cannot sleep at night and is very tired during the day. *Id.* She thus sleeps frequently during the day. Tr. 48.

Poland syndrome and the rejection of her breast implants caused Meyer many problems due in large part, in her view, to her physicians' failure to understand either condition. Tr. 44–45. She explained that her kidney cancer may have been ongoing for eight or nine years, given the size of the tumor that was eventually detected. Tr. 46–47. As for Poland Syndrome, Meyer explained that the right side of her body did not develop properly. Tr. 47. Her right hand was smaller than the left and was missing some of the joints. *Id.* She had surgery to correct the condition, but the surgeons "cut too deep," resulting in continued pain when she used her hand. *Id.*

Meyer explained that her neck and knee problems were the result of a fall in 2004. Tr. 45–46. She had surgery that remedied problems she had with her arm, but her neck pain continued. Tr. 45. She elected not to have surgery to repair the hip and knee problems resulting from the fall. Tr. 46. Being allergic to most pain medications resulted in her not being able to relieve her pain with anything other than over the counter medications. Tr. 45–46. Her knee problems prevented her from running or standing for long periods. Tr. 46.

The ALJ asked the VE a series of hypothetical questions. Tr. 48–50. The first required the VE to assume a person with the residual functional capacity (RFC) to perform light work, meaning that the person could occasionally lift and carry twenty

pounds and frequently lift or carry ten pounds, and could sit, stand, and walk up to six hours in an eight hour day with normal breaks. Tr. 49. The hypothetical further required the VE to assume that the person had these additional limitations: she could only occasionally climb ramps and stairs, could never climb ladders, ropes, or scaffolds, must avoid movement above the shoulder level, could frequently perform fine and gross manipulation, and could only occasionally balance, stoop, kneel, crouch or crawl. *Id.* The VE testified that such a person would be able to perform Meyer's previous work as an IT project manager. Tr. 49–50. Further limiting the hypothetical person to performing only simple, routine, or repetitive tasks would prevent the person from performing any work. *Id.* The VE testified that a person from the first hypothetical who was also required to be off task for more than thirty percent of the workday would not be able to perform any work. Tr. 50.

The ALJ issued a decision on December 1, 2020, finding that, because Meyer was able to perform her past work, she was not disabled from the alleged onset date through the date she was last insured under the Social Security Act. Tr. 13–25. The Appeals Council denied Meyer's request for review of the ALJ's decision on July 21, 2021. Tr. 1–3. Meyer timely filed her federal complaint on August 26, 2021. ECF No. 1.

**2. Legal Standards**

The Social Security Act provides disability insurance benefits to individuals with physical and mental disabilities who have contributed to the program. *See* 42 U.S.C. § 423. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner uses a sequential, five-step approach to determine whether the claimant is disabled. *See Schofield v. Saul*, 950 F.3d 315, 317 (5th Cir. 2020); *see also* 20 C.F.R. § 404.1520(a)(4)(2019). The claimant bears the burden of proof on the first four steps, but the Commissioner bears the burden on the fifth step. *See Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021). A finding that the claimant is disabled or not disabled at any point in the five-step review terminates the analysis. 20 C.F.R. § 404.1520(a)(4) (2019).

This court's review of the ALJ's disability determination is "highly deferential," and the court asks "only whether substantial evidence supports the decision and whether the correct legal standards were employed." *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018) (citations omitted). "A decision is supported by substantial evidence if 'credible evidentiary choices or medical findings support the decision.'" *Salmond v. Berryhill,* 892 F.3d 812, 817 (5th Cir.

2018) (quoting *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016)). "Substantial evidence is 'more than a mere scintilla but less than a preponderance.'" *Id.* (quoting *Williams v. Admin. Rev. Bd.*, 376 F.3d 471, 476 (5th Cir. 2004)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The reviewing court must scrutinize the record to determine whether substantial evidence supports the ALJ's decision. *See Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

### 3. Analysis of the ALJ's Determination

#### A. Step One

At step one, the ALJ must determine whether the claimant is involved in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i) (2019). A person engaged in substantial gainful activity is not disabled, regardless of her medical condition, age, education, or work experience. 20 C.F.R. § 404.1520(b) (2019).

The ALJ found that Meyer had not engaged in substantial gainful activity since the alleged disability onset date of November 13, 2013, through the date she was last insured—December 31, 2017. Tr. 71. This finding is not in dispute.

#### B. Step Two

At step two, the ALJ determines whether any of the claimant's impairments is severe and has lasted or is expected to last a continuous period of at least twelve months. 20 C.F.R. § 404.1520(a)(4)(ii) (2019) (citing 20 C.F.R. § 404.1509). An

impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c) (2019). An impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Salmond*, 892 F.3d at 817 (emphasis omitted) (quoting *Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000)). If a person does not have a severe impairment, she is not disabled. *Schofield*, 950 F.3d at 318 (citing 20 C.F.R. § 404.1520(c)).

The ALJ found that Meyer had the following severe impairments: Poland syndrome, bilateral patellofemoral compartment osteoarthrosis, fibromyalgia, obesity, cervicalgia, osteoarthrosis of the left thumb and carpometacarpal joint (first), moderate diverticulosis, history of cervical spine fusion and carpal tunnel syndrome. Tr. 16. These findings are not in dispute.

## C. Step Three

At step three, the ALJ determines if any of the claimant's severe impairments meets or equals a listed impairment in appendix 1 (Listing). 20 C.F.R. § 404.1520(a)(4)(iii) (2019); *see also* 20 C.F.R. Part 404, Subpt. P, App'x 1 (2019). If all the criteria of a Listing section are met or equaled, the claimant is considered disabled. 20 C.F.R. § 404.1520(d) (2019); *Whitehead*, 820 F.3d at 780–81.

The ALJ considered Listing section 1.02 (major dysfunction of a joint), 1.04, (disorders of the spine), and 14.09 (inflammatory arthritis) and concluded that Meyer did not have an impairment or combination of impairments that met or equaled the severity of the any of the Listing sections considered. Tr. 16–18. These findings are not in dispute.

### D. RFC

Before reaching the final two steps, the ALJ must assess the claimant's RFC. 20 C.F.R. § 404.1520(e) (2019) (citing 20 C.F.R. § 404.1545). The RFC is a determination of the most a claimant can do despite all physical and mental limitations. *Perez*, 415 F.3d at 461–62 (citing 20 C.F.R. § 404.1545(a)(1)); SSR 96-8p, 1996 WL 374184, at *2, 4 (July 2, 1996). The RFC determination is "based on all the relevant medical and other evidence in [the] case record[.]" 20 C.F.R. § 404.1520(e) (2019); *see also Perez*, 415 F.3d at 461–62 (citing 20 C.F.R. § 404.1545(a)(1)); SSR 96-8p, 1996 WL 374184, at *2, 3, 5 (July 2, 1996). Evidence includes objective medical evidence; medical opinion; other medical evidence, such as medical history, diagnosis, and prognosis; information from the claimant or other nonmedical source; and prior administrative medical findings of state agency reviewing consultants. 20 C.F.R. § 404.1513(a) (2019).

The ALJ is responsible for assessing a claimant's RFC. 20 C.F.R. § 404.1546(c) (2019); *see also Taylor v. Astrue,* 706 F.3d 600, 602–03 (5th Cir.

2012) (stating that the RFC determination is the "sole responsibility of the ALJ").

The ALJ also bears the responsibility of resolving conflicts in medical opinions.

*See Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). "The RFC assessment

must include a narrative discussion describing how the evidence supports each

conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical

evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7

(July 2, 1996).

> The ALJ determined that Meyer had the RFC:

> [T]o perform light work . . . . However the claimant is limited to
> occasional crawling, crouching, kneeling, stooping, balancing, and
> climbing ramps and stairs. She can never climb ladders, ropes, or
> scaffolds. She should avoid moving her upper extremities above
> shoulder level. The claimant is limited to frequent fine and gross
> manipulation bilaterally.

Tr. 18. The ALJ did not include any mental limitations in the RFC.

In making the RFC determination, the ALJ engaged in a thorough discussion

and analysis of Meyer's medical records, the hearing testimony, and the medical

opinion evidence in the record. Tr. 18-24. The ALJ took note of Meyer's self-

reported symptoms and concluded that, while her symptoms could have been caused

by her medically determinable impairments, Meyer's statements about "the

intensity, persistence, and limiting effects" of her symptoms were "not entirely

consistent with the medical evidence and other evidence in the record . . . ." Tr. 19–20.

The ALJ first summarized Meyer's treatment records dating back to August 13, 2014. *See* Tr. 20. On that date, while Meyer reported some abdominal discomfort, her exam findings were mostly normal, including a normal mental status finding and "no evidence of depression anxiety or agitation." *Id.* (citing Tr. 2149–51). The ALJ discussed other treatment notes dated June 15, 2015, which document that Meyer was diagnosed with fibromyalgia in the 1980s. *Id.* (citing Tr. 366). The ALJ noted that the same record states that Meyer had experienced neck pain since she was a teenager due to a motor vehicle accident and that her back surgery occurred after she fell in 2004. *Id.* The ALJ also correctly reported that the same treatment note found her speech to be clear, as were her communication and thought processes, although she occasionally lost her train of thought. *Id.* The ALJ summarized the remainder of Meyer's treatment notes to include continued reports of pain and discomfort and other symptoms related to fibromyalgia. Tr. 20–21. However, despite continued pain and other symptoms, she maintained much of her strength and range of motion. *Id.*

The ALJ considered several medical opinions. The ALJ found state agency medical consultant Kim Rowlands, M.D.'s opinion that Meyer suffered from no medically determinable impairments to be unpersuasive because Dr. Rowlands did

not have access to the full medical record or the hearing testimony. Tr. 21. The ALJ found state agency consultant Susan Clifford, M.D.'s opinion that Meyer could work at the medium exertion level to be unpersuasive for the same reasons. Tr. 22. As for Dr. Hoang, the ALJ first noted that Dr. Hoang testified that most of Meyer's medical problems occurred in 2019 and 2020, well after her last date of insured—December 31, 2017. Dr. Hoang testified that, during the relevant period, Meyer could work at the light level of exertion with further limitations including no reaching over shoulder level, only frequent gross and fine manipulation, and no climbing. Tr. 22 (discussing Dr. Hoang's hearing testimony). The ALJ explicitly recognized Dr. Hoang's testimony that Meyer's complaints of brain fog, memory loss, and fatigue could have been caused by fibromyalgia. *Id.* The ALJ found Dr. Hoang's opinion persuasive because the medical evidence from the relevant period supported it. *Id.*

The ALJ compared the records and opinions to Meyer's subjective complaints and concluded that:

> These facts in the record do not dispute that the claimant has conditions, which . . . may cause her pain and/or discomfort. What these pieces of evidence suggest is that the claimant's symptoms may not be accurately reported, may not exist at the level of severity assumed by the claimant's testimony at the hearing and may have other mitigating factors against their negative impact on the claimant's ability to engage in work activity.

Tr. 23. The ALJ went on to explain that:

> Although the claimant has described daily activities which are fairly
> limited . . . two factors weigh against considering these allegations to
> be strong evidence in favor of finding the claimant disabled . . . . First,
> allegedly limited daily activities cannot be objectively verified with any
> reasonable degree of certainty. Secondly, even if the claimant's daily
> activities are truly as limited as alleged, it is difficult to attribute that
> degree of limitation to the claimant's medical condition, as opposed to
> other reasons, in view of the relatively weak medical evidence and other
> factors discussed in this decision. Overall, the claimant's reported
> limited daily activities are considered to be outweighed by the other
> factors discussed in this decision.

Tr. 24. To put it bluntly, the ALJ considered and weighed all the evidence, including

Meyer's self-reported symptoms and did not credit her self-reports over the medical

evidence. It is not for this court to re-weigh the evidence. *Perez*, 415 F.3d at 461

(stating that the court may not reweigh the evidence, substitute its judgment, or

resolve conflicts in the evidence). The court concludes that there is ample medical

and other evidence in the record to support the ALJ's RFC determination.

Meyer argues that the ALJ failed to consider all the evidence presented and

that, had he done so, he would have included mental limitations in the RFC. ECF

No. 11 at 7–10. For example, Meyer cites an August 13, 2014 record wherein she

self-reported suffering from anxiety, depression and difficulty sleeping. ECF No. 11

at 7 (citing Tr. 2160). But just below those self-reported symptoms, in the very same

record on the next page, the physical examination showed her judgment and insight

to be within normal limits, that she was oriented to time, place and person, and that

there was no evidence of anxiety, depression, or agitation. Tr. 2161. While the ALJ

did not cite that precise page in the record, he did cite a treatment note from August 29, 2014, making exactly the same report. Tr. 20 (citing "26F/20," which is Tr. 2151).

Meyer also faults the ALJ for failing to recognize that she had "occasional loss of thought." ECF No. 11 at 7. But the ALJ cited the exact page of the record that Meyer is citing—Tr. 366—and stated that she "occasionally lost her train of thought." Tr 20 (Tr. 366). Meyer goes on to cite several records demonstrating that she suffers from symptoms of brain fog, memory deficits, and headaches. ECF No. 11 at 7–8. She further cites her own testimony and Dr. Hoang's testimony at the administrative hearing to support her argument that she is more limited than the ALJ found. ECF No. 11 at 9. The court has reviewed the cited records and testimony and concludes that none of it undermines the ALJ's decision. Much of it is self-reported and, as is discussed above, the ALJ adequately explained and supported his reasons for discounting Meyer's self-reported symptoms. Moreover, the court cannot conclude that the ALJ simply disregarded parts of the record that might undermine his conclusions, as Meyer appears to be arguing. To the contrary, much of the evidence Meyer says the ALJ ignored is discussed outright in his decision. The ALJ fully and fairly considered and weighed all the evidence, made credibility determinations and formed his conclusions. He did as he is required.

The RFC as found by the ALJ is supported by substantial evidence and was determined using the correct legal standards.

### E. Step Four

At step four, the ALJ determines whether the claimant can perform jobs she previously worked by comparing the RFC determination with the demands of the claimant's past relevant work. 20 C.F.R. § 404.1520(f) (2019); *see also Perez*, 415 F.3d at 462. If the claimant can perform her past work, she is not disabled. 20 C.F.R. § 404.1520(f) (2019). If the claimant cannot perform her past work, the ALJ proceeds to step five. *See* 20 C.F.R. § 404.1520(g)(1) (2019).

The ALJ found that Meyer could perform her past work. Tr. 24–25. The ALJ appropriately relied on the VE's testimony on this point. Because the VE's testimony was based on a hypothetical question that incorporated all the limitations reasonably recognized by the ALJ and Meyer's attorney was afforded an opportunity to cross-examine the VE, the VE's testimony is substantial evidence supporting the ALJ's step-four determination. *See Masterson*, 309 F.3d at 273–74 (holding that the ALJ properly relied on the VE's testimony because the ALJ "scrupulously incorporated" all the limitations "supported by the evidence and recognized by the ALJ" and gave an opportunity for cross-examination). Because the ALJ found Meyer not disabled at step four, he correctly terminated the analysis there.

15

## 4. Conclusion

The ALJ's decision denying social security benefits is consistent with the law and supported by substantial evidence. There is no genuine issue of material fact, and summary judgment is appropriate. Fed. R. Civ. P. 56(a), (c). Accordingly, the court recommends that Defendant's motion for summary judgment be GRANTED and Plaintiff's motion for summary judgment be DENIED.

The parties have fourteen days from service of this Memorandum and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas on January 17, 2023.

_____
Peter Bray
United States Magistrate Judge

16